IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SEARCH CONSULTANTS ) | |
| OF NEW ENGLAND, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-121 |
| ) | |
| DRIVEN, INC., ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

In this breach of contract action, plaintiff Search Consultants of New England alleges that defendant Driven, Inc. did not fully compensate plaintiff for professional recruiting services plaintiff rendered to defendant pursuant to their contract.[1] At issue now is defendant's Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings pursuant to Rule 12(b)(6), Fed. R. Civ. P. Specifically, defendant contends that plaintiff "may not maintain" this action because plaintiff is a foreign corporation "transacting business" in Virginia without a certificate of authority. Va. Code § 13.1-758(A). For the reasons that follow, defendant's motion must be denied; the record does not reflect that plaintiff is "transacting business" in Virginia within the meaning of Va. Code § 13.1-757 and thus plaintiff need not obtain a certificate of authority to maintain this action pursuant to Va. Code § 13.1-758.

### I.

The facts relevant to defendant's motion are appropriately derived from plaintiff's

---

[1] Plaintiff's breach of contract claim against defendant was initially filed in York County Superior Court in Maine and removed by defendant to the United States District Court for the District of Maine. There, defendant filed a motion to dismiss or, in the alternative, to transfer venue to the Alexandria Division of the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). Before the motion in Maine was resolved, plaintiff voluntarily dismissed the Maine action pursuant to Rule 41(a), Fed. R. Civ. P., and then plaintiff filed this action.

1

Complaint and the affidavit of Karen Holt, plaintiff's Senior Partner. *See Continental Properties, Inc. v. Ullman Co.*, 436 F. Supp. 538, 540 (E.D. Va. 1977) (in resolving a motion brought pursuant to Va. Code § 13.1-758's predecessor, Va. Code § 13.1-119, the district court considered facts from the complaint as supplemented by the parties' submissions); *see also Rock-Ola Mfg. Corp. v. Wertz*, 249 F.2d 813, 814 (4th Cir. 1957) (resolving threshold motion to dismiss based on foreign corporation's lack of certificate of authority after taking evidence as to the nature and extent of the foreign corporation's activity in Virginia). Accordingly, the pertinent facts are as follows:

- Plaintiff is a corporation organized under the laws of Maine and headquartered in Kennebunkport, Maine. Plaintiff provides professional recruiting services.

- Plaintiff's sole place of business is in Maine. Plaintiff does not have any offices, employees, directors, or property in Virginia.

- Plaintiff never performed any services or work while physically present in Virginia and plaintiff does not use any Virginia entity in plaintiff's work.

- Defendant is a corporation organized under the laws of Virginia and headquartered in Falls Church, Virginia. Defendant specializes in products and services related to electronic discovery used in litigation.

- Plaintiff's Senior Partner, Karen Holt, met an employee of defendant's New York office, Todd Messina, at a legal technology conference held in New York.

- When Messina expressed interest in a job candidate represented by plaintiff, Holt sent a proposed Fee Agreement to Messina. Messina forwarded this proposal to defendant's Chief Executive Officer, Oswaldo Jimenez.

- Jimenez and Holt negotiated a final Fee Agreement via telephone and email.

- On March 3, 2015, defendant entered into the final Fee Agreement with plaintiff for professional recruiting services. Defendant's CEO, Jimenez, executed the final Fee Agreement on defendant's behalf.

- The Fee Agreement provides that defendant must pay plaintiff certain fees when defendant hires a candidate that plaintiff has referred to defendant within the previous twelve months.

- During the course of plaintiff's engagement under the Fee Agreement, plaintiff has provided defendant by email the identity of at least thirty-nine job candidates for defendant's consideration. There have been over 800 emails and 300 text messages between plaintiff and defendant with respect to the ongoing efforts undertaken by plaintiff at defendant's behest to identify candidates for employment.

- Defendant hired at least four of the thirty-nine job candidates provided by plaintiff for defendant's consideration.

- None of the job candidates hired by defendant following plaintiff's referral lived or worked in Virginia at the time of hiring.

## II.

The question presented here is whether, on these facts, plaintiff must obtain a certificate of authority pursuant to Va. Code § 13.1-758 in order to continue litigating this breach of contract action. Analysis of this question therefore properly begins with the statutory text, which provides as follows:

> A. A foreign corporation transacting business in this Commonwealth without a certificate of authority may not maintain a proceeding in any court in this Commonwealth until it obtains a certificate of authority.

Va. Code § 13.1-758(A).

The parties do not dispute that the requirement to obtain a certificate of authority pursuant to § 13.1-758 applies to foreign corporations that, as here, bring suit in Virginia federal courts on the basis of diversity of citizenship. *Rock-Ola Mfg. Corp.*, 249 F.2d at 814. Nor do the parties contest that a foreign corporation "transacting business" in Virginia within the meaning of § 13.1-758 need not obtain a certificate of authority before commencing an action, but must obtain a certificate of authority before the entry of judgment in the case.[2] Instead, the parties'

---

[2] Va. Code § 13.1-758(C) ("A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court shall further stay the proceeding until the foreign corporation or its successor obtains the certificate."); *Video Eng'g v. Foto-Video Electronics Inc.*, 207 Va. 1027, 1029–31 (1967) (reversing trial court's dismissal for failure to obtain certificate of authority prior to suit's commencement and noting that most

3

dispute here focuses sharply on whether § 13.1-758 applies in this case, that is, whether on this record plaintiff is "transacting business" in Virginia such that plaintiff is required to obtain a certificate of authority before continuing to maintain this action.

As it happens, the Virginia General Assembly, when it enacted § 13.1-757, elected not to define the phrase "transacting business" as used in the statute, but chose instead to provide a clue as to the meaning of the phrase by adding to the statute a non-exhaustive list of activities that do not constitute "transacting business" in Virginia. *See* Va. Code § 13.1-757(B). As is often typical of efforts to define something by saying what it is not, this clue is helpful, but not dispositive. The clue the Virginia General Assembly provided is to make clear that the phrase "transacting business" as used in § 13.1-757 "shall have no effect on personal jurisdiction under § 8.01-328.1," Virginia's long-arm statute. Va. Code § 13.1-757(E).[3] Courts interpreting § 13.1-757 and the long-arm statute have made clear that "transacting business" under § 13.1-757 requires "[a] much stronger showing of in-state activities" to "find that a corporation is transacting business within the meaning of Virginia's corporate qualification statutes than is required to subject a foreign corporation to local taxation or service of process." *QuesTech, Inc. v. Liteco, AG*, 735 F. Supp. 187, 188 (E.D. Va. 1990) (citing *Continental Properties, Inc.*, 436 F. Supp. at 540). Thus, because communications sent to a Virginia recipient in the course of negotiating a contract would be insufficient on their own to establish personal jurisdiction in Virginia, it follows *a fortiori* that the same activity—communications regarding negotiation of the Fee Agreement and providing candidates' names by email—would be insufficient to establish that the sender is

---

jurisdictions require compliance before judgment); *see also Quarles v. Miller*, 86 F.3d 55, 58 (4th Cir. 1996) (observing that a party may "force a corporation to comply with the certificate of authority requirement before allowing the corporation to proceed with ongoing litigation").

[3] Furthermore, the non-exhaustive list of activities "does not apply in determining the contacts or activities that may subject a foreign corporation to service of process, taxation, or regulation under the laws of the Commonwealth other than this chapter." Va. Code § 13.1-757(D).

4

"transacting business" in Virginia within the meaning of § 13.1-757. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451–52 (4th Cir. 2000) (holding that personal jurisdiction was lacking where plaintiff initiated contract negotiations in Ohio, plaintiff executed contract in Virginia, and defendant sent financial information to Virginia). In short, the communications from plaintiff in Maine and New York to defendant in New York and Virginia negotiating the Fee Agreement and sending candidates' names are insufficient to qualify as "transacting business" in Virginia so as to require a certificate of authority under § 13.1-757.

This result is firmly supported by courts' decisions applying Va. Code § 13.1-757. Although, as the parties' briefs reflect, there is no factually apposite authority from the Supreme Court of Virginia, other courts have decided cases that are instructive here. The most factually apposite authority is found in *QuesTech, Inc. v. Liteco, AG*, 735 F. Supp. 187 (E.D. Va. 1990), and *Rock-Ola Manufacturing Corp. v. Wertz*, 249 F.2d 813 (4th Cir. 1957).[4] In *QuesTech, Inc.*, a foreign corporation that developed, manufactured, and marketed helicopters was held not to be "transacting business" in Virginia where the foreign corporation's activities in Virginia consisted of (i) "seeking a source of supply for helicopter blades," (ii) "negotiating service agreements with suppliers," and (iii) "taking delivery thereunder." *See id.* at 189. Plaintiff's activities here—namely negotiating a proposed Fee Agreement with an employee of defendant's New York office, finalizing the Fee Agreement with defendant's CEO, and emailing job candidate information from Maine to defendant in Virginia—reflect a lesser connection to Virginia than the activities at issue in *QuesTech, Inc. See id.* Because the activity in *QuesTech, Inc.* did not

---

[4] Defendant argues that *QuesTech, Inc.* and *Rock-Ola* are distinguishable and thus cannot inform § 13.1-757's application in the present case. To be sure, neither case analyzes activities identical to plaintiff's activities here. But the decisions in *QuesTech, Inc.* and *Rock-Ola* are instructive because the activity at issue in those cases showed a stronger connection to Virginia than plaintiff's activity here, but the activities in those cases nonetheless fell far short of "transacting business" in Virginia so as to require the plaintiffs in those cases to obtain a certificate of authority.

constitute "transacting business" in Virginia under § 13.1-757, it follows *a fortiori* that plaintiff's activity here does not constitute "transacting business" in Virginia under the statute.

The Fourth Circuit's decision in *Rock-Ola* provides further support for the result reached here. There, a foreign corporation that shipped juke-boxes to a Virginia distributor for sale on consignment was held not to be "transacting business" in Virginia under Va. Code § 13-211, a predecessor of Va. Code § 13.1-757, because the distributor's sale of consigned juke-boxes in Virginia constituted the distributor's business, not the foreign corporation's business. *See Rock-Ola*, 249 F.2d at 817.[5] The Virginia distributor's sale of consigned juke-boxes in *Rock-Ola* is similar to defendant's use, if any, of the names of candidates plaintiff provides to defendant. Whether the juke-boxes are sold in *Rock-Ola* is the distributor's business in Virginia; so, too, whether defendant offers a position to a candidate whom plaintiff has referred constitutes defendant's business in Virginia, not plaintiff's business. *See id.* Accordingly, both *QuesTech, Inc.* and *Rock-Ola* point persuasively to the conclusion that plaintiff's activity here does not constitute "transacting business" in Virginia under § 13.1-757, and therefore plaintiff is not required to obtain a certificate of authority to maintain this suit.

Virginia is not unique in requiring foreign corporations to obtain a certificate of authority in order to maintain a case in its courts. Indeed, as a leading treatise on corporations notes, "[a]ll states have statutes providing that foreign corporations transacting business in the state without authority may not maintain or commence suits in any court of the state until a certificate of authority is obtained." 18 William M. Fletcher, et al., Fletcher Cyclopedia of the Law of Private

---

[5] The Fourth Circuit also held that the foreign corporation was not "transacting business" in Virginia because the foreign corporation and the Virginia distributor had a vendor-vendee relationship, not a principal-agent relationship that would permit attribution of the distributor's in-state activity to the foreign corporation. *See id.* at 816 (citing *Carnegie v. Art Metal Constr. Co.*, 191 Va. 136 (1950)).

6

Corporations § 8609 (perm. ed., rev. vol. 2019). A review of analogous corporate qualification statutes from other states discloses that Maryland imposes a similar requirement on foreign corporations seeking to maintain suit in its courts.[6] And, as it happens, the Court of Appeals of Maryland has interpreted Maryland's corporate qualification statute under circumstances strikingly similar to the instant case. In *S. A. S. Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335 (1979), a District of Columbia employment agency received a telephone call from a Maryland restaurant owner seeking to hire an employee, agreed to work with the restaurant owner for a referral fee, and sent the restaurant owner marketing materials and a copy of its contract and fee schedule. *See id.* at 336–37. When the restaurant owner hired a candidate referred by the agency without paying a fee, the agency sued for breach of contract. *Id.* at 337. On these facts, the Court of Appeals of Maryland held that the agency was not required to qualify under Md. Code § 7-301 to maintain its suit because the agency's "referral of potential employees . . . [was] analogous to the shipment of goods by a foreign manufacturer," an activity insufficient to constitute "doing business" in Maryland. *Id.* at 340. The instant case is essentially on all fours with *S. A. S. Personnel Consultants, Inc.* As occurred in *S. A. S.*, plaintiff in this case negotiated an agreement by telephone and email and sent defendant job candidates. It follows that the result reached here finds firm support in the conclusion of the Court of Appeals of Maryland that the activity there—essentially similar to the activity here—does not constitute transacting business in Virginia. Accordingly, this persuasive authority confirms the result reached here that plaintiff is not "transacting business" in Virginia within the meaning of § 13.1-757, and plaintiff is not required to obtain a certificate of authority to maintain this suit pursuant

---

[6] Maryland's corporate qualification statutes require a foreign corporation that "is doing or has done any intrastate, interstate, or foreign business in this State" to register pursuant to Md. Code § 7-202(a) or qualify pursuant to Md. Code § 7-203(a) to "maintain a suit." Md. Code § 7-301.

to § 13.1-758.[7]

An appropriate Order shall issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
May 13, 2020

/s/
T. S. Ellis, III
United States District Judge

---

[7] Neither party cites any additional apposite authority from Virginia or any other state.

8